## LINES *v.* BRANDON.

### Opinion delivered April 30, 1917.

1. FORECLOSURE AND REDEMPTION—JURISDICTION OF PROBATE AND CHANCERY COURTS.—The probate court has no jurisdiction in foreclosure proceedings nor the redemption therefrom, and settlements made in the probate court with reference thereto are not binding upon courts of chancery in suits either to foreclose or to redeem from foreclosure sales.

2. FORECLOSURE AND REDEMPTION—AMOUNT NECESSARY TO REDEEM.— The amount necessary to redeem from foreclosure sales in equity as between mortgagor and mortgagee, where the mortgagee has bought in the property, is the amount of the debt due from the mortgagor to the mortgagee including interest, together with taxes paid, the necessary improvements and repairs made, together with the cost of the trust.

3. MORTGAGES—ADVANCES—ACCOUNT OF WIDOW OF MORTGAGOR IN MAKING CROP.—One H. mortgaged certain lands to secure the payment of purchase money notes, together with all other indebtedness that might accrue on account of advances of provisions, goods, moneys etc. *Held*, after the death of H. in calculating the amount due by H. to the mortgagee, it was proper to include in the account necessary advances to H.'s widow, while she was gathering the crop on the said land.

4. DESCENT AND DISTRIBUTION—PERSONAL PROPERTY.—The collateral heirs of a deceased person take a one-half interest in his personal property subject to his debts, while the widow takes a one-half, exclusive of the indebtedness of the estate.

5. MORTGAGES—FORECLOSURE—INTEREST ON RENTS.—H. purchased lands from B. and gave a mortgage thereon to secure the payment of the purchase price, and an open account. H. died and B. foreclosed the mortgage. A certain amount was allowed the estate as rent. *Held*, the rents not being sufficient to pay the interest on the principal debt, that no interest should be allowed on the amount of the rents.

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; modified and affirmed.

*Killough, Lines & Killough,* for appellants.

1. Appellants had the right to redeem within one year and the suit was filed within the time. 65 Ark. 392; 64 *Id.* 576.

2. No tender was necessary, the amount necessary being unknown. A tender would have been a mere form. 12 Enc. of Ev. 499-501; 2 Greenl. on Ev. 562; 21 Ark. 560; 27 *Id.* 29; 39 So. 1020; 17 Atl. 356; 134 U. S. 68. As the right to redeem is conceded, other authorities cited are omitted. The face of the transaction is not the amount required to redeem where there are credits as here. 27 Cyc. 1824; 65 Ark. 392.

3. The credits claimed should have been allowed. The $93.71 purchased after the death of Harvey Hudgins should not have been charged to his account. The open account was not a proper charge.

4. A chancery court can set aside the allowance of a claim by the probate court for good cause, and allow all proper credits. 11 R. C. L. 66; 90 Ark. 263; 68 *Id.* 492; 68 *Id.* 495; 19 U. S. Law Ed. 260; 33 Ark. 729. Fraud will be inferred, if necessary, for purposes of justice. 33 Ark. 732-3.

5. Partnerships are entities and accounts can not be offset promiscuously. Mechem on Partnership, p. 446. See, also, 1 Loveland on Bankruptcy, 547-8; 14 Am. St. 712; 51 L. R. A. 465; L. R. A., 1916A-1211. The mercantile account due Brandon, Baugh & Co. could not be charged to the mortgage due Brandon & Baugh. The only amount due Brandon & Baugh was the two $900 notes and interest of which $180 was paid.

6. If the account should be held to come within the debt secured by the mortgage, it should be purged of all improper charges. A credit should be allowed for all rents, leaving only $1,060.98 necessary to redeem.

*Mann & Mann,* for appellees.

1.  The probate court judgment is conclusive except for fraud.  64 Ark. 1; 70 *Id.* 88; 73 *Id.* 612.  The judgment of a court having jurisdiction is not open to collateral attack by allegation of fraud in the transaction between the parties which formed the basis of the judgment.  68 Ark. 492; 73 *Id.* 440; 75 *Id.* 415; 83 *Id.* 508; 90 *Id.* 261.  But there is no allegation nor proof of fraud.

2.  Even if we go behind the judgment of the probate court and state the account, the findings of the chancellor must be sustained.  All proper credits have been given.

3.  The parties were not sincere in their effort to redeem.  In redeeming one must pay the purchase price, interest, repairs and costs and be credited with rents.  65 Ark. 392; 45 *Id.* 275.  The chancellor's findings are correct.

HUMPHREYS, J.  This suit was originally instituted by appellants against W. P. Brandon and J. D. Baugh in the St. Francis Chancery Court to redeem the following described real estate in St. Francis County, Arkansas, towit:  "The west half of the northeast quarter of section twenty-five, and the east half of the northwest quarter of section twenty-five, in township five north, range five east, containing 160 acres; also northwest quarter of section twenty-two, containing 160 acres, and the north half of the northeast quarter of section twenty-one, containing 80 acres, all in township six north, range two east," which had been sold under the power of sale contained in a mortgage executed on the 20th day of February, 1909, by Harvey and Martha Hudgins to S. H. Mann, trustee, for W. P. Brandon and J. D. Baugh.

W. P. Brandon and J. D. Baugh answered that they had stood ready at all times to accept as redemption of said lands the bid, interest, taxes and necessary repairs, less rents, but that appellants had refused to tender said amount, and still refused to pay the amount to which they were entitled.  They pleaded that on the date of sale under the power in the mortgage, the estate of Harvey Hudgins, deceased, was indebted to them in the sum of

$3,390; that said indebtedness was covered by the terms of the mortgage, and that they bid that amount at the sale. They further pleaded that the amount due by the estate to them had been probated, and that the judgment rendered thereon, not having been appealed from, was final and binding on appellants.

On December 8, 1914, appellants filed an amended bill, alleging that the claim presented by Brandon & Baugh against the estate of Harvey Hudgins, deceased, contained items properly chargeable against Martha Hudgins individually, and not against the estate of Harvey Hudgins, deceased; and was, therefore, fraudulent and void. They alleged that Brandon, Baugh & Company had furnished the supplies to Harvey Hudgins in his lifetime, for which Brandon & Baugh presented a claim against the estate, and that such items were not proper charges. They made Dan Wylds, the third member constituting the firm of Brandon, Baugh & Co., a party defendant.

On the same date, Dan Wylds joined W. P. Brandon and J. D. Baugh in an answer to the amended complaint, in which the answer to the original bill was adopted, and in which it was denied that the claim presented to the estate contained improper or false items.

The pleadings presented other issues unnecessary now to mention as they have been excluded by the following agreement of counsel: ''It is agreed in this cause that the land described in the complaint herein was the property of Harvey A. Hudgins at the time of his death, said title being subject to the deed of trust in favor of Brandon & Baugh, from which it is sought to be redeemed, and that the said H. A. Hudgins died intestate and without issue, and that Martha E. Hudgins, now Ricks, was his widow, and the co-defendants with T. E. Lines are his only heirs at law.''

The chancellor heard the cause upon the pleadings, depositions and exhibits thereto, from which he found and decreed that appellants might redeem said lands by

paying the bid of $3,391 with 10 per cent. per annum from the 28th day of September, 1912; $307.88 taxes, with $68 interest to June 26, 1916; $31.32 for improvements and repairs, with $9.60 interest thereon to June 26, 1916, or a total amount of $5,081.12, less $200 per year for rent for the years 1913, 1914, 1915 and 1916.

From the finding and decree of the chancellor, an appeal has been prosecuted and the cause is here for trial *de novo.*

In short, the facts are that Harvey A. Hudgins, a negro man, owned a part of the lands described above and bought the other lands from Brandon & Baugh, his landlords, for $2,700, and to secure the payment thereof executed three promissory notes for $900 each, bearing interest at the rate of 10 per cent. per annum, and gave a mortgage on all of the lands to secure the payment of the notes, together with all other indebtedness that might accrue on account of advances of provisions, goods, moneys, etc. At the time the mortgage was executed, W. P. Brandon and J. D. Baugh were engaged in a general mercantile or furnishing business with Dan Wylds under the firm name of Brandon, Baugh & Co., and arranged for Hudgins to get his supplies for the purpose of cropping a large body of bottom land owned by Brandon & Baugh through that firm. In addition to the real estate mortgage aforesaid, Harvey Hudgins executed a chattel mortgage to Brandon, Baugh & Co., on the 1st day of March, 1909, to secure advances. Brandon & Baugh stood for Harvey Hudgins, and an account was opened with Brandon, Baugh & Co. On November 16, Harvey Hudgins paid the account to that date, including the first $900 purchase money note. The account was continued from that date, and on December 17, 1909, Harvey Hudgins bought a span of mules for $400, which was charged against him on the account. Hudgins died on January 30, 1910, at which time he owed the two $900 purchase money notes, with interest, and $1,156.65 on open account. After his death, the widow, Martha Hudgins continued to gather

the crop and purchase goods until March 5, 1910, at which time she concluded to rent the same lands for the year 1910, which her husband had cultivated in 1909. On that day, she purchased on the account two mules for $450, took credit for all the cotton she had gathered, the labor performed by her husband, amounting to $129.70, corn to the value of $27.50 delivered to J. J. Jackson, and hay to the amount of $7.50 delivered to the same party, and executed her note for $1,375.30, which left her owing a balance of $210. She executed a chattel mortgage on the property left by her husband and purchased by her to secure these amounts and any advances that might be made to her during the year 1910 or thereafter. She continued the business of farming for a period of three years, and during that time, used and appropriated all the personal property left by her husband to the payment of her individual accounts. Incident to gathering the crop of 1909, the account was increased after January 30, 1910, until March 5, 1916, from $1,156.65 to $1,250.36. The cotton crop was applied as a credit, leaving a balance of $675.35 due on the Harvey Hudgins account at the time Martha Hudgins opened a separate account with the firm. This balance was carried into and became a part of Martha Hudgins' account upon her promise to liquidate it as soon as she collected some insurance money. This amount was not paid out of the insurance money and was afterward charged back to the account of Harvey Hudgins. The $675 just mentioned included the price of two mules purchased by Harvey Hudgins on December 17, 1909. During the continuation of her farming business, she also sold and appropriated to her own use timber off of the mortgaged lands to the value of $788.35.

On June 6, 1910, Martha E. Hudgins took out administration papers on the estate of Harvey Hudgins, deceased, and on February 18, 1911, approved an account in favor of Brandon & Baugh against the estate of her husband, showing a balance due them by the estate in the sum of $2,835.35. The account was filed on that day with

the clerk, and on March 6, 1911, was allowed in the fourth class by the probate judge. This amount, together with the interest thereon and the cost of executing the trust, equaled $3,391, or the amount of the bid representing the indebtedness due on September 28, 1912, the date the deed of trust to Mann for the benefit of Brandon & Baugh was foreclosed.

Martha Hudgins is a negro woman of ordinary intelligence who had received some education, including instruction in bookkeeping.

It is unnecessary to discuss the law and facts with regard to the right to redeem; or whether necessary to make an actual tender, because the chancellor has found with appellants on these issues and appellees do not complain.

(1) It is contended by appellants that in this character of cases, courts of equity are not bound by judgments of probate courts in adjudicating amounts due under mortgages given by the deceased to third parties; that, if necessary, courts of equity will falsify and surcharge all items which have entered into and become a part of the account through fraud or mistake. We agree with counsel that the probate court has no jurisdiction in foreclosure proceedings nor the redemption therefrom, and that settlements made in the probate court with reference thereto are not binding upon courts of chancery in suits either to foreclose or to redeem from foreclosure sales.

(2) We also agree with counsel that the amount necessary to redeem from foreclosure sales in equity as between mortgagor and mortgagee, where the mortgagee has bought in the property, is the amount of debt due from the mortgagor to the mortgagee, including interest, together with taxes paid, the necessary improvements and repairs made, together with the cost of the trust.

The issue is narrowed down to the sole question of the amount appellants are required to pay in order to redeem their lands. They insist that the terms of the real

estate mortgage are not broad enough to include the account run by Harvey Hudgins in his lifetime, and his wife thereafter, in gathering the crop, with Brandon, Baugh & Co.; that the law must treat the partnership of Brandon, Baugh & Co. as a separate entity. As a general rule, separate partnerships are treated in the law as separate entities, but the chancellor has found, under all the facts and circumstances in this case, that as a part of the original undertaking, Brandon & Baugh arranged to furnish Harvey Hudgins with supplies of all kinds necessary to farm lands which he had rented from them through the firm of Brandon, Baugh & Co., of which firm they were members. Considering all the facts and circumstances, as well as the business relationship between the parties reflected in this record, we do not think the evidence is clearly against the finding of the chancellor in this regard. The mercantile account should have been and was found to come within the debts secured by the real estate mortgage to W. P. Brandon and J. D. Baugh by Harvey and Martha Hudgins on the 20th day of February, 1909.

(3) We think it proper to have included in the account necessary advances to the widow while she was gathering the crop.

(4) It will be remembered that Harvey Hudgins died intestate without direct heirs, leaving the widow and a part of appellants as his collateral heirs. Under the law of descents and distributions, almost all the personal property left by Harvey Hudgins became the separate property of Martha Hudgins. The collateral heirs were interested in the personal property to the extent of one-half interest therein, subject to the indebtedness of the estate. The widow was entitled to a one-half interest therein, exclusive of the indebtedness of the estate. The evidence and inventory disclose that the only personal property owned by Harvey Hudgins at the time of his death was two wagons, one of them old; five mules, one of which afterward died, and two of them not paid for; eleven plows, eight harrows, two cotton planters, six

sets of harness, five hoes, and one mower and rake. As stated above, after his death, this property was treated by the widow as her own, mortgaged, and applied to the payment of her individual accounts. Appellants complain that the chancellor did not allow credit for $400 on account of two mules returned and afterward charged on the separate account of Martha Hudgins. This amount was included in the item of $675 credited to her individual account and charged back to the Harvey Hudgins account. They also complain that the chancellor did not give them credit for labor performed by Harvey Hudgins for Brandon & Baugh in the sum of $127.90, and for corn and hay in the sum of $35. These amounts were used by Martha Hudgins in the settlement and adjustment of her account on March 5, 1910. She owned only a one-half interest in the account covering these items free from the debts of her husband, and could have used only one-half of the amount in adjusting her individual account. Brandon & Baugh should have credited the other one-half of the amount, or $80.45, on the $1,250 account against Harvey Hudgins, just as they did the cotton which was delivered to them to be credited on said account. This credit of $80.45 should have been made of date not later than March 5, 1910.

(5) Appellants claim that the chancellor erred in not allowing interest on the rents. The rents were not sufficient to pay the interest on the principal debt. Unless the rents each year exceeded the interest on the principal debt, it would have been improper to allow interest on the rents.

We have given special attention to every item claimed to have been charged to each account and claimed to be double charged; and to the items claimed as just credits by appellants and not credited, and can find no mistake in the account presented to the probate court except as to the labor, corn and hay items aforesaid. We can find no duplicate charges. It seems to us that there is not the slightest evidence tending to show fraud, and

no evidence tending to show a mistake in the accounting, except as to the small amount just mentioned.

While the settlement in the probate court is not binding upon the chancery court in this character of case, we find that it is a correct statement in every particular except the failure to enter a credit of $80.45 as of date March 5, 1910, on account of the labor, corn and hay items above referred to; and therefore frame our finding in accordance with the account stated as modified by the credit of $80.45 as of date March 5, 1910.

The chancellor by decree gave appellants ninety days in which to pay into court the amount necessary to redeem the lands in question. This court is not apprised as to whether the amount was paid.

As the decree in this case involves the title to real estate, the cause is remanded with directions to the chancellor to modify his findings and decree in accordance with this opinion and to allow appellants to redeem said lands within thirty days thereafter by paying the amount of the decree, as modified, with accumulated interest to the date of payment.

With this modification, the judgment is in all things affirmed.